IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WANDA G. HORNE, ) | Civil Action No. 3:06-3310-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On November 24, 2003, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held March 18, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated May 25, 2006, denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-six years old at the time she alleges she became disabled and thirty-nine years old at the time of the ALJ's decision. She has a high school education and past relevant work as an administrative assistant and farm worker. Plaintiff alleges disability since January 1, 2003, due to depression and problems with her cervical spine and low back.

The ALJ found (Tr. 20-21):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's cervical spondylosis, sacroiliac joint dysfunction, visual deficit, and myofascial pain syndrome are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the residual functional capacity to perform light work (involving lifting no more than 20 pounds occasionally and 10 pounds frequently) requiring no climbing of ropes, ladders or scaffolding, no more than occasional crouching, crawling, and bending; no repetitive reaching overhead; allowing a sit/stand option; not requiring fine binocular vision due to the claimant's 20/40 visual acuity in one eye and 20/200 in the other; and not requiring concentrated exposure to dampness, high humidity or extreme cold.

7. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

9. The claimant has "more than a high school (or high school equivalent) education"(20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.l520(g)).

On October 3, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on November 21, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that the ALJ violated: (1) 20 C.F.R. § 404.1526 by not expressly considering the issue of medical equivalence; (2) Social Security Ruling ("SSR") 96-2p by not affording significant weight to her treating physician; and (3) SSR 96-7p by improperly analyzing her

3

credibility. The Commissioner contends that the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence and free of legal error.

    A.    <u>Substantial Evidence</u>

The ALJ's decision that Plaintiff could perform a range of light work and thus was not disabled is supported by substantial evidence.[*] In particular, the ALJ's decision is supported by the medical notes of her treating physicians. Plaintiff began treatment with Dr. Gregory Kang, a physical medicine and rehabilitation specialist, in October 2002. Tr. 152-189, 248-270. She complained of lower back, left leg, left foot, and right shoulder pain from an incident in which she fell on her back in June 2002. Dr. Kang diagnosed sacroiliac joint dysfunction, lumbar radiculitis, and scapulothoracic myofascial pain. He prescribed medications and physical therapy. Tr. 188-189. Dr. Kang administered trigger point injections (trapezius, cervical paraspinals, and rhomboids) in November and December 2002 and January 2003. Tr. 182-184, 187.

On February 21, 2003, Plaintiff reported that her lower back pain had "pretty much resolved" after a course of physical therapy, but she still had pain and muscle spasms in her right shoulder and scapula, right arm pain, and tingling in her hands. She stated that her symptoms were relieved by Percocet and Flexeril. Dr. Kang noted that Plaintiff had normal upper extremity reflexes and

---

[*]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

positive right upper trapezius and scapular trigger points. He diagnosed cervicothoracic and myofascial pain and cervical radicular symptoms. Tr. 181.

On March 3, 2003, Plaintiff underwent trigger point injections in her scapular and rhomboid muscles. Tr. 180. She underwent a cervical epidural steroid injection in April 2003, after which she reported a little bit of improvement in her neck and shoulder pain. Tr, 177-178. On May 19, 2003, Plaintiff reported that Percocet and Flexeril gave her good pain relief and allowed her to do her day to day activities. Dr. Kang administered left trapezius muscle trigger point injections and continued Plaintiff's medications. Tr. 176. In June 19, 2003, Plaintiff complained of lower back pain after gardening. Dr. Kang diagnosed left sacroiliac joint dysfunction and probable lumbar facet syndrome. Plaintiff underwent left sacroiliac joint and facet block injections the following week. Tr. 175-177. In July 2003, Plaintiff underwent a cervical epidural steroid injection. Dr. Kang administered trigger point injections on Plaintiff's upper trapezius in July 2003, her cervical paraspinals in August 2003, her trapezius and levator scapula muscles in September 2003, and her left pectoralis minor and upper trapezius muscles in October 2003. Tr. 169-172.

On November 12, 2003, Dr. Kang noted that Plaintiff had thoracic rib tenderness, a slightly weak left grip strength, and slightly diminished left thumb sensation. He diagnosed left chest pain, possible costochondritis, and possible cervical radiculopathy. Dr. Kang prescribed medication and recommended an upper extremity EMG study. Tr. 168. He administered trigger point injections in Plaintiff's chest in December 2003 and cervicothoracic junction in January 2004. Tr. 81, 112, 154, 166.

On February 12, 2004, Plaintiff complained of worsening pain in her neck and shoulder. She reported that her medications were working well without significant side effects. Dr. Kang

prescribed Effexor (an anti-depressant) and continued Plaintiff's other medications. Tr. 155. On March 10, 2004, Plaintiff complained of neck, shoulder, and lower back pain after doing some yard work. Dr. Kang diagnosed degenerative disc disease with spondylosis, myofascial pain, and depression. He prescribed Prozac (an anti-depressant) and continued Percocet and Flexeril for Plaintiff's pain. Tr. 156. Right upper trapezius trigger point injections were administered on April 9, 2004. Tr. 157. Plaintiff reported adequate pain control and good control of her depression in May 2004. Tr. 158. In June 2004, Dr. Kang administered left sacroiliac joint trigger point and facet block injections. Tr. 117-118. In July 2004, Plaintiff reported that the sacroiliac joint block injection had not helped. Dr. Kang diagnosed lumbar radiculitis, refilled Plaintiff's medications, and recommended a lumbar transforaminal epidural injection, which Plaintiff underwent the following month. Tr. 119-120.

In September 2004, Plaintiff reported to Constance Alger, a nurse practitioner in Dr. Kang's practice, that she got no pain relief from her lumbar epidural injection. Tr. 121. Dr. Kang administered trigger point injections and continued her medications. Tr. 122. On October 29, 2004, Ms. Alger noted that Plaintiff had normal strength and reflexes throughout. She prescribed medications and administered trigger point injections. Tr. 123. Ms. Alger noted that Plaintiff had full strength and reflexes throughout in December 2004. Tr. 124. In February 2005, Plaintiff complained to Dr. Kang of right neck and shoulder pain and poor sleep. Dr. Kang diagnosed possible cervical facet syndrome and prescribed medications. Tr. 125.

In November 2003, Plaintiff was treated by Dr. William Stout for complaints of chest, jaw, and left arm pain; shortness of breath; and left arm pain. Tr. 227-235. Dr. Stout diagnosed chest pain. A chest x-ray on November 7, 2003 revealed that Plaintiff had no active pulmonary disease.

Tr. 232. A stress cardiolite study on November 24, 2003, revealed that Plaintiff had normal myocardial perfusion and wall motion. She had an ejection fraction of 79%. Tr. 227.

The ALJ's decision is supported by the objective medical evidence. A lumbar x-ray on October 21, 2002 was "unremarkable." Tr. 245. Nerve conduction studies in November 2002 revealed no evidence of lumbosacral radiculopathy, no evidence of neuropathy, and normal neuromuscular junction testing. Tr. 185. On January 22, 2003, x-rays of Plaintiff's left ribs showed no evidence of acute rib fracture. Tr. 244. An MRI of Plaintiff's cervical spine in February 2003 indicated that Plaintiff's spinal cord was normal; there was no evidence of disc bulges, herniation, or protrusion at C2-3, C6-7, or C7-T1; there was mild disc bulging and foraminal stenosis at C3-4; and there was disc space narrowing, sclerotic annular osteophytes, and moderate to severe foraminal stenosis at C4-5 and C-6. The opinion of Dr. Richard Holgate, a radiologist, was that the MRI showed evidence of mild cervical spondylosis, with the most prominent changes at C4-5 and C5-6, with a normal spinal cord. Tr. 242-243.

The ALJ's decision is also supported by the consultative examination of Dr. Regina Roman on October 1, 2004. Plaintiff reported to Dr. Roman that she was treated by Dr. Kang and previously underwent a cervical MRI. Dr. Roman noted that she did not have any of Dr. Kang's records or radiographic studies for review. Plaintiff complained of neck, rib, lumbar, and leg pain. She reported that chiropractic care and physical therapy had not helped her symptoms and epidural and trigger point injections provided her with only temporary relief. She reported that her oral pain medications provided some pain relief. Plaintiff stated that she drove a car, performed her own activities of daily living, and cooked and cleaned her house with frequent rest breaks. Dr. Roman found that Plaintiff had full cervical, thoracic, and lumbar spine ranges of motion, positive supine

7

straight leg raising tests, difficulty with heel/toe walking, normal tandem walking, and the ability to squat to 70 degrees of knee flexion. She also noted that Plaintiff got on and off the examination table without difficulty, had a mildly antalgic gait, and performed all maneuvers upon physical examination in a slow and deliberate manner. Plaintiff was noted to have full ranges of motion in all her major extremity joints, fine dexterity in her fingers, normal reflexes, full muscle strength, and intact sensation. Dr. Roman diagnosed Plaintiff with chronic cervical, lumbar, and left rib pain; gestational diabetes, monocular vision; and status post appendectomy, cholecystectomy, and tubal litigation. She opined that Plaintiff could perform light to medium duty work without frequent bending or overhead lifting. Tr. 224-226.

The ALJ's determination that Plaintiff had the RFC to perform a range of light work is also supported by the findings of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). Dr. George Keller reviewed Plaintiff's medical records on February 23, 2004, and opined that Plaintiff could perform light work. Tr. 213-222. On October 11, 2004, Dr. Judith Von, a State agency psychologist, reviewed Plaintiff's medical records and opined that Plaintiff did not have a severe mental impairment. Tr. 199-212. On October 12, 2004, Dr. William Cain, a State agency physician, reviewed Plaintiff's medical records and opined that Plaintiff could perform light work that did not require climbing of ladders, ropes or scaffolds; more than occasional climbing of ramps and stairs; crouching and crawling; or more than frequent balancing and stooping. He also found that Plaintiff should avoid repetitive overhead reaching. Tr. 190-197.

B.     Listings/Combination of Impairments

Plaintiff contends that the ALJ violated 20 C.F.R. § 404.1526 because the ALJ did not expressly consider the issue of medical equivalence by comparing the combined effect of Plaintiff's multiple impairments (visual deficit, sacroiliac joint dysfunction, cervical spondylosis, myofascial pain syndrome, and depression) with closely listed impairments to determine if the combined effect was of equal medical significance. She also appears to claim that she should be found disabled based on the combined effect of her multiple impairments. The Commissioner contends that the ALJ properly considered whether Plaintiff had an impairment that met or equaled the requirements of a Listing, specifically the Listings at § 1.04 and § 2.02, and found that Plaintiff's impairments were not severe enough to meet or medically equal, either singly or in combination, one of the Listings. Additionally, the Commissioner contends that the ALJ properly considered the combined effects of Plaintiff's impairments.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a). "Medical

equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Finally, a claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Here, the ALJ specifically considered whether Plaintiff's impairments met or equaled the Listings at § 1.04 and § 2.02. Plaintiff has not shown that she satisfied the requirements at § 1.04 because the evidence did not show that she had nerve root compression characterized by neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflex loss, spinal arachnoiditis, or lumbar spinal stenosis. She has not shown that she satisfied the requirements at § 2.02 because she retained 20/40 vision in one eye. The ALJ also found that Plaintiff's impairments, either singly or in combination, did not medically equal one of the Listings. Tr. 16, 20. Plaintiff has not identified which of the Listings she believes she medically equals. Additionally, the State agency medical consultants signed Disability Determination Transmittal forms (Tr. 48-49), indicating they considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings. See SSR 96-6p (signature of a State agency medical consultant on the Disability Determination Transmittal form ensures consideration was given to whether a Listing is met or equaled).

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

10

1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985).  These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence.  Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ properly considered all of Plaintiff's combinations and their combined effects.  He specifically found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments.  Tr. 16, 20.  The ALJ specifically discussed all of Plaintiff's severe and non-severe impairments in the "Evaluation of the Evidence" section of his decision (Tr. 16-18).  See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently considered impairments in combination where he separately discussed each impairment, the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work).

The ALJ also considered Plaintiff's limitations from her combination of impairments in the hypothetical to the VE.  Specifically, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work history who was limited to light work that did not require more than occasional stair climbing; climbing ropes, ladders, or scaffolding; more than occasional crouching, crawling, or bending; or repetitive reaching.  The ALJ also stated that the claimant would need a job that allowed for a sit/stand option and would not require fine binocular distance vision due to limitations of vision of 20/400 in one eye and 20/40 in the other eye.  In response, the VE identified a significant number of jobs that Plaintiff could perform. Tr. 43-44.

    C.    <u>Treating Physician</u>

Plaintiff alleges that the ALJ erred in not affording significant weight to the opinion of her treating physician, Dr. Kang.  On March 9, 2005, Dr. Kang partially completed a questionnaire (which appears to have been submitted to him by Plaintiff's representative) concerning Plaintiff's capabilities.  Dr. Kang opined that Plaintiff could sit for fifteen to thirty minutes before needing to get up and move about; could stand and/or walk for about fifteen to thirty minutes before needing to sit and rest; could sit, stand, and walk for a total of about two hours in an eight hour day; could occasionally lift and carry ten pounds and could frequently lift and carry less than ten pounds in a competitive work situation, and had pain that was aggravated by lifting and carrying more than minimal weight.  Tr. 76.  The Commissioner contends that the ALJ did not err by not affording significant weight to Dr. Kang's functional abilities assessment because Dr. Kang never issued such restrictions during his treatment of Plaintiff, his own treatment notes do not support this opinion, Dr. Roman's findings do not support these restrictions, and Dr. Kang's opinion is not supported by the opinions of the State agency physicians.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of

time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Kang's March 2005 opinion is supported by substantial evidence. As noted by the ALJ, Dr. Kang's March 2005 restrictions are not supported by the objective data and he did not issue such restrictions to Plaintiff during the course of her medical treatment. Tr. 18. The ALJ noted that diagnostic studies on Plaintiff's ribs and lumbar spine in October 2002 were returned without abnormalities; diagnostic studies of Plaintiff's spine in February 2003 revealed that she only experienced mild cervical spondylosis and degenerative changes at the C4-5 and C5-6 vertebral levels; and diagnostic studies of her heart in November 2003 revealed no evidence of active disease processes. Tr. 17. The ALJ's decision is also supported by the findings of Dr. Roman who examined Plaintiff and opined that she could perform light or medium work that did not require frequent bending and overhead lifting. See Tr. 17, 224-226. Additionally, the ALJ's decision to discount Dr. Kang's May 2005 opinion is supported by the findings of the State agency physicians, as discussed above.

    D.    Credibility

Plaintiff alleges that the ALJ erred in evaluating her credibility because she failed to incorporate the administration's own rules for evaluating a claimant's symptoms and overstated the extent to which Plaintiff participated in activities of daily living.  The Commissioner contends that the ALJ: (1) properly considered Plaintiff's testimony and found that her subjective complaints were inconsistent with the objective medical evidence, (2) did not overstate Plaintiff's daily activities, (3) properly considered that Plaintiff's treatment for her impairments was fairly conservative, and (4) properly evaluated Plaintiff's subjective complaints using the two-pronged pain analysis.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Substantial evidence supports the ALJ's credibility determination.  The ALJ accepted that Plaintiff had impairments capable of causing pain and discussed the two-part test for evaluating pain.

Tr. 16-17. As discussed above, the findings of Drs. Kang and Roman, as well as the objective medical tests, do not indicate the degree of symptoms alleged by Plaintiff. The medical records indicate that Plaintiff had full range of motion of her cervical, thoracic, and lumbar spine as well as her shoulder; generally had full strength; and had normal reflexes. See Tr. 85, 92-93, 177, 181, 224-226. The ALJ also considered evidence that Plaintiff was treated fairly conservatively for her conditions with pain and anti-inflammatory medications and she received some pain relief with physical therapy and epidural steroid injections. Tr. 17-18.

The ALJ's decision is also supported by reports of Plaintiff's daily activities. In May 2003, Plaintiff reported to Dr. Kang that she could "function and do her day to day activities" and "even did some hedge clipping th[at] past weekend." Tr. 176. In March 2004, Plaintiff complained to Dr. Kang of pain she experienced after "doing some yard work." Tr. 83, 114, 156. Plaintiff reported to Dr. Roman that she drove a car, performed her own activities of daily living, cooked, and cleaned her house with frequent breaks. Tr. 224-226. In her daily activities reported in September 2004, Plaintiff reported that she lived with her husband and small (ages two and five) children, cooked small meals, cleaned her house once a week over a period of two days, did laundry, handled the financial responsibilities of her household, grocery shopped, and drove a car. Tr. 148-151. At the hearing, Plaintiff testified that she cleaned her house every two weeks over a period of several days, drove a car every two weeks to the grocery store, bank, or to pay a bill; got up each day and dressed her small children; fixed breakfast; and did laundry. Tr. 36-37.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has

produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

October 26, 2007
Columbia, South Carolina