IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Wanda G. Horne, | ) | |
| | ) | |
| Plaintiff, | ) | CA No. 3:06-3310-HMH-JRM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue,[1] Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[2] Wanda G. Horne ("Horne") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. In his Report and Recommendation, Magistrate Judge McCrorey recommends affirming the Commissioner's decision. Horne objects to the Report and Recommendation. For the

---

[1] On February 12, 2007, Michael J. Astrue ("Astrue") became the Acting Commissioner of Social Security. Therefore, Astrue is substituted for Jo Anne B. Barnhart pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (2006).

1

reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation and affirms the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 14-21), and summarized as follows. At the time of the ALJ's decision on May 25, 2006, Horne was a thirty-nine-year-old woman with a high-school education. (Id. at 15.) Her past relevant employment includes positions as an administrative assistant and as a farm worker. (Id.) Horne alleges that she has been disabled since January 1, 2003, due to problems with her cervical spine, lower back, and depression. (Id. at 78.)

Dr. Gregory Kang ("Dr. Kang") began treating Horne on October 21, 2002. (Id. at 188-189.) Horne complained of pain in her lower back, left leg, left foot, and right shoulder resulting from a fall in June 2002. (R. at 188.) Dr. Kang diagnosed Horne with sacroiliac joint dysfunction, lumbar radiculitis, and scapulothoracic myofascial pain, and prescribed physical therapy, Celebrex, and Skelaxin. (Id. at 189.) In addition, Dr. Kang administered trigger point injections in Horne's trapezius, cervical paraspinals, and rhomboids in November and December 2002 and January 2003. (Id. at 182-84, 187.)

In an examination on February 21, 2003, Horne reported that her "lower back pain [had] pretty much resolved." (Id. at 181.) However, Dr. Kang noted that Horne still had pain and muscle spasms "along the right side of her shoulder and scapular border." (Id. at 181.) In addition, Horne stated that Percocet and Flexeril relieved her pain, but only temporarily. (R. at 181.) Dr. Kang discontinued Horne's physical therapy. (Id.) He administered trigger point

injections on March 3, 2003, and a cervical epidural steroid injection on April 4, 2003, after which Horne reported some improvement in her neck and shoulder pain. (Id. at 177-78, 80.)

On May 19, 2003, Horne reported that she was doing well overall but had pain in her neck associated with muscle spasms. (Id. at 176.) She stated, however, that taking Percocet gave her enough pain relief so that she could function and perform her day-to-day activities. (Id.) Dr. Kang again administered trigger point injections and continued her medications. (R. at 176.) On June 19, 2003, Horne reported severe pain in the left side of her lower back brought about by gardening. (Id. at 175.) Dr. Kang diagnosed sacroiliac dysfunction and probable lumbar facet syndrome and administered sacroiliac joint and facet block injections the following week. (Id. at 174-75.) In addition, Horne received trigger point injections in July, August, September, and October 2003. (Id. at 169-73.)

On November 12, 2003, Horne reported pain in her chest, left arm, and left shoulder. However, Voltaren partially alleviated the pain. (Id. at 168.) Dr. Kang administered trigger point injections in December 2003 and January 2004. (R. at 81, 112, 154, 166.)

On March 10, 2004, Horne claimed to have continued pain in her neck, shoulder, and lower back after doing some yard work. (Id. at 156.) Dr. Kang diagnosed cervical degenerative disc disease with spondylosis, myofascial pain, and depression. (Id.) Horne received a trigger point injection on April 9, 2004. (Id. at 157.) On May 10, 2004, Horne reported adequate pain control and good control of her depression with Prozac. (Id. at 158.) On June 10, 2004, Dr. Kang administered a trigger point injection, which Horne reported did not alleviate her pain. (R. at 117-19.) Accordingly, on August 3, 2004, Horne received an epidural injection for her diagnosis of lumbar radiculitis. (Id. at 120.)

On September 30, 2004, Horne stated that she continued to have pain, and Dr. Kang administered a trigger point injection. (Id. at 122.) In September, October, and December 2004, Constance Alger, a nurse practitioner in Dr. Kang's practice, examined Horne and found that Horne had full strength and reflexes. (Id. at 121, 123, 124.) On February 24, 2005, Horne returned to Dr. Kang and reported worsening pain in the right side of her neck and shoulder area. (Id. at 125.)

On October 21, 2002, an x-ray of Horne's lumbar spine was unremarkable. (R. at 245.) Electrodiagnostic evaluation on November 27, 2002, revealed no evidence of a lumbosacral radiculopathy or neuropathy and normal neuromuscular junction testing. (Id. at 185.) An x-ray on January 22, 2003, showed no evidence of acute rib fracture. (Id. at 244.) Finally, an MRI of Horne's cervical spine on February 25, 2003, showed a normal spinal cord; normal findings at C2-3, C6-7, and C7-T1; mild bulging of disc material and exit foraminal stenosis at C3-4; and disc space narrowing and sclerotic annular osteophytes at C4-5 and C5-6. (Id. at 242-43.)

Dr. Regina Roman ("Dr. Roman"), an osteopathic physician, performed a consultative examination on Horne on October 1, 2004, and found that Horne could perform light to medium duty work without frequent bending or overhead lifting based upon her examination. (Id. at 225-26.) Dr. George Keller and Dr. William Cain, state agency physicians, reviewed the record and concluded that Horne could perform light work. (R. at 199-212, 190-97.) Dr. Judith Von, a state agency psychologist, reviewed the medical evidence and found that Horne did not have a severe mental impairment. (Id. at 199-212.)

On November 24, 2003, Horne filed an application for DIB. (Id. at 14.) The application was denied initially and on reconsideration. (Id. at 61.) After a hearing held March 18, 2005, the

4

ALJ issued a decision dated May 25, 2006, denying benefits. (Id. at 21.) On October 3, 2006, the Appeals Council denied Horne's request for review. (R. at 4.) Horne filed the instant action on November 21, 2006.

## II. Report and Recommendation

In her brief to the Magistrate Judge, Horne argued that the ALJ erred in the following ways: (1) the ALJ violated 20 C.F.R. § 404.1526 by not expressly considering the issue of medical equivalence; (2) the ALJ improperly evaluated the opinion of Dr. Kang under the treating physician rule; and (3) the ALJ failed to correctly assess Horne's credibility. (Pl.'s Br. 1.)

The Magistrate Judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on any of Horne's three grounds. Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision to deny Horne benefits. (Report and Recommendation 16.)

## III. Discussion of the Law

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it. See id.

### B. Objections

First, Horne objects to the Magistrate Judge's conclusion that the ALJ properly assessed Dr. Kang's opinion. (Objections 1-3.) Second, Horn objects to the Magistrate Judge's finding that the ALJ properly determined that Horne's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Id. 2.) Third, Horne objects to the Magistrate Judge's finding that the ALJ properly evaluated Horne's credibility. (Id. 3.)

### 1. Treating Physician

The ALJ must give controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d)-(e)(1) (2006). Furthermore, Social Security Ruling ("SSR") 96-2p states that "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected." 1996 WL 374188, at *1 (1996). "It may still be entitled to deference and be adopted by the adjudicator." Id. However, if a physician's opinion "is not supported by clinical evidence or

if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

On March 9, 2005, Dr. Kang opined in a questionnaire ("questionnaire") that Horne could lift no more than ten pounds and that she was unable to sit, stand, or walk for more than two hours in an eight-hour day. (R. at 76.) The ALJ discounted Dr. Kang's restrictions because they were not supported by the objective evidence, Horne's daily activities, or her "fairly conservative" treatment history. (Id. at 17-18.) In addition, the ALJ noted that Dr. Kang never issued any restrictions to Horne during her treatment. (Id. at 18.)

The court finds that substantial evidence supported the ALJ's decision to discount the restrictions described by Dr. Kang in the questionnaire. As the ALJ noted, Dr. Kang's restrictions are not supported by Horne's treatment history. Horne's medical records at various times from April 2003 to October 2004 indicated that despite some continuing complaints of pain, Horne had normal range of motion in her shoulder; adequate pain control; normal strength; and full range of motion in her cervical, thoracic, and lumbar spine in all planes. (Id. at 85, 176-77, 181, 225-26.) In addition, diagnostic studies of Horne's ribs and lumbar spine on October 21, 2002, and of her heart on November 7, 2003, revealed no abnormalities, and an MRI of Horne's cervical spine on February 25, 2003, revealed only mild cervical spondylosis. (Id. at 232, 243, 245.) Further, Dr. Roman examined Horne on October 1, 2004, and opined that Horne "should be able to perform light to medium duty without frequent bending or overhead lifting." (R. at 225-226.)

Given that Dr. Kang and Dr. Roman's treatment notes indicated largely normal functioning, the ALJ reasonably determined that Dr. Kang's restrictions indicated in the

7

questionnaire were overly restrictive. See Craig, 76 F.3d at 590 (upholding an ALJ's rejection of a physician's opinion because it was inconsistent with the physician's treatment notes). The ALJ's determination was further supported by his observation that Dr. Kang's opinion was inconsistent with the other medical evidence in the record which indicated clinical observations largely within normal parameters. (R. at 85, 177, 181, 225-26, 232, 243, 245.) Therefore, Horne's objection that the ALJ improperly discounted Dr. Kang's opinion is without merit.

### 2. Combination of Impairments

Second, Horne objects to the Magistrate Judge's finding that the ALJ properly evaluated whether Horne's impairments met or equaled an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, at step three of the five-step process required by 20 C.F.R. § 416.920(a)(4)(iii). Specifically, Horne contends the ALJ erred by not expressly considering the issue of medical equivalence by comparing the combined effect of her impairments with closely listed impairments to determine if the combined effect was of equal medical significance. (Objections 2.)

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). When a person has a combination of impairments, 20 C.F.R. § 419.1526(b)(3) provides that "[i]f the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing."

In the instant case, the ALJ explicitly considered whether Horne's impairments met or equaled the listings at §§ 1.04, 2.02, and 2.03. (R. at 16.) He found that "the record does not include adequate evidence of nerve root compression characterized by neuro-anatomic

distribution of pain, motor loss accompanied by sensory or reflex loss, spinal arachnoiditis, or lumbar spinal stenosis" to meet § 1.04. (Id.)  In addition, Horne's impairments did not meet §§ 1.02 or 1.03 because she retained 20/40 vision in one eye and did not experience "10 degrees of contraction of peripheral visual fields in her better eye such that the widest diameter subtends an angle no greater than twenty degrees or . . . visual field efficiency of twenty percent or less." (Id.)  Finally, the ALJ concluded that Horne "has cervical spondylosis, and a sascroiliac joint dysfunction, a visual deficit and myofascial pain, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Id.)

Horne does not specify which listing she believes her impairments medically equal. (Objections 2.)  "A claimant bears the burden of showing that his or her impairment meets or equals a listed impairment" and Horne's "bare assertion[]" that her combination of impairments should equal a listing is insufficient to meet her burden of proof.  Smith v. Astrue, No. 3:07CV00014, 2007 WL 4276377, at *3-4 (W.D. Va. Nov. 9, 2007) (unpublished).  Further, the court finds that the ALJ properly considered all of Horne's impairments, alone and in combination, in his determination of whether her impairments met or equaled a listing.  The ALJ described and evaluated each of Horne's impairments and determined that they did not meet a listing either alone or in combination.  See Gooch v. Sec'y Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that the claimant

9

did not meet the 'listings.'"). In addition, the ALJ gave explicit reasons why Horne's impairments did not meet a listing. Finally, the ALJ's decision was supported by substantial evidence for the reasons stated above and included in his evaluation. (R. at 16.) Therefore, the court finds that the ALJ properly evaluated whether Horne's impairments met or equaled a listing.

### 3. Horne's Credibility

Third, Horne objects to the Magistrate Judge's conclusion that the ALJ properly evaluated Horne's credibility. (Objections 3.) Subjective complaints of pain are evaluated under the test articulated in Craig, 76 F.3d at 594-95. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Id. at 594. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id. (internal quotation marks omitted). The ALJ must "expressly consider the threshold question of whether [Horne] . . . demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges." Id. at 596. Only after a claimant has met the threshold showing of a medical impairment likely to cause pain must "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work . . . be evaluated." Id. at 595. In making these determinations,

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on

10

>   credibility, supported by the evidence in the case record, and must be
>   sufficiently specific to make clear to the individual and to any subsequent
>   reviewers the weight the adjudicator gave to the individual's statements and the
>   reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (1996).

Magistrate Judge McCrorey concluded that the ALJ properly evaluated Horne's credibility regarding the severity of her symptoms because substantial evidence supports the ALJ's credibility determination, and the ALJ properly applied the two-part test for evaluating pain. (Report and Recommendation 14.) In support of her objection, Horne argues that the ALJ improperly omitted the first prong of the Craig test and went "directly into a credibility analysis, in violation of the required method." (Objections 3-4.) In addition, Horne argues that her "minimal activities of daily living . . . were in no way reflective of an ability to perform paying work activity, eight hours a day, five days a week." (Id. 4.)

The court agrees with the Magistrate Judge that the ALJ properly evaluated Horne's credibility. The ALJ found that Horne had severe impairments capable of causing pain and discussed the proper test for evaluating credibility. (R. at 16-17.) In addition, the ALJ's finding that Horne's allegations regarding the severity of her pain were not credible was supported by substantial evidence. As noted by the ALJ, Horne's treatment history was "fairly conservative" and she experienced some pain relief with physical therapy and medications. (Id. at 17-18.) Horne's medical records at various times from April 2003 to October 2004 indicated that Horne had normal range of motion in her shoulder; adequate pain control; normal strength; and full range of motion in her cervical, thoracic, and lumbar spine in all planes. (Id. at 85, 177, 181, 225-26.)

Further, the evidence regarding Horne's daily activities supported the ALJ's finding. In May 2003, Horne reported to Dr. Kang that taking Percocet gave her enough relief so that she could "function and do her day to day activities." (Id. at 176.) In that examination, Dr. Kang also noted that Horne was able to do "some hedge clipping" the previous weekend. (Id.) On March 10, 2004, Horne reported to Dr. Kang that she aggravated her lower back "doing some yard work." (R. at 83.) In a daily activities questionnaire dated September 8, 2004, Horne reported restrictions on her activities, but was able to drive, clean her house, cook, and sit down to pay bills. (Id. at 148-49.) At the hearing on May 25, 2006, Horne testified that she was able to drive, go shopping, dress, and prepare breakfast for her children, and wash clothes. (Id. at 36-37.) Therefore, the court finds that the ALJ properly evaluated Horne's credibility regarding her symptoms. Based on the foregoing, the court adopts Magistrate Judge McCrorey's Report and Recommendation affirming the Commissioner's decision.

Therefore, it is

**ORDERED** that the Commissioner's decision to deny Horne benefits is affirmed.

**IT IS SO ORDERED**.

                                             s/Henry M. Herlong, Jr.
                                             United States District Judge

Greenville, South Carolina
December 14, 2007